IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ANTHONY M. WAIT,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-1167

_____/

Opinion filed March 3, 2017.

An appeal from the Circuit Court for Bay County.
James B. Fensom, Judge.

Rachael Elizabeth Bushey of O'Brien Hatfield, P.A., Tampa, for Appellant.

Pamela Jo Bondi, Attorney General, and Jennifer J. Moore, Assistant Attorney General, Tallahassee, for Appellee.


ROBERTS, C.J.

     Appellant, Anthony M. Wait, appeals the denial of his Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief.  We affirm.

     Appellant and a co-defendant were charged (under the principal theory) with making, possessing, throwing, or discharging of a destructive device, which carried

a mandatory minimum sentence of ten years' imprisonment, and with transporting a firebomb. The co-defendant went to trial first and was acquitted. After the former co-defendant was acquitted, he agreed to testify against Appellant. Right before Appellant's trial began, Appellant rejected a favorable plea offer that would have adjudicated him guilty of a felony, required him to write a letter of apology to the victim, and would have placed him on two years of community control followed by three years of probation. Appellant proceeded to trial and was convicted of both crimes.

In Appellant's motion for post-conviction relief, he argued that his trial counsel was ineffective for failing to properly advise him to accept the plea offer and about all of the pertinent matters, such as the principal theory, relevant to his case. He further argued that trial counsel's failure to advise him about all of the pertinent matters denied him the ability to make an informed decision about whether or not he should accept the plea offer. The post-conviction court granted Appellant an evidentiary hearing and made extensive findings. On appeal, Appellant now argues that trial counsel was ineffective when she affirmatively advised him to reject a favorable plea based upon her unreasonable expectations of success at trial. Since Appellant did not amend his post-conviction relief motion below to say that trial counsel affirmatively advised him to reject the plea, the State was denied the opportunity to conclusively refute the inference that trial counsel conveyed her

personal beliefs about Appellant's case to Appellant. His rephrased argument on appeal invites a different analysis from the analysis provided by the post-conviction court and invites this Court to improperly dismiss the post-conviction court's findings of credibility and reweigh the evidence. We decline to accept Appellant rephrased argument on appeal.

During the evidentiary hearing on Appellant's post-conviction motion, Appellant's trial counsel testified that she met with Appellant multiple times and went over the evidence against him including: the discovery she received from the State; Appellant's entire interrogation with the law enforcement; the evidence from the former co-defendant's trial; the applicable case law including the principal theory; and the former co-defendant's deposition. Trial counsel testified that she gave Appellant a copy of his interrogation and they discussed Appellant's incriminating statements. Trial counsel also testified that she believed Appellant understood the principal theory based upon his testimony at trial, which was he did not know about the former co-defendant's intentions nor that there was a firebomb in the car. The post-conviction court found trial counsel's testimony more credible than Appellant's testimony with regards to the legal advice that she provided to Appellant and found Appellant understood the principal theory based upon his trial testimony. Trial counsel affirmatively testified that she never advised Appellant to reject the plea offer and had advised Appellant that it was a "good plea." Appellant

3

testified that trial counsel told him to reject the plea offer, but the post-conviction court did not find Appellant's testimony credible. Trial counsel testified that she left the decision up to Appellant about whether or not to accept the plea offer.

Because the evidence does not show that trial counsel actually advised Appellant to accept the plea, the post-conviction court had to determine whether or not trial counsel provided Appellant with enough information to allow him to make an informed decision about whether or not he should accept the plea. The inquiry must focus on what trial counsel conveyed to Appellant about his chance of an acquittal and not on what she believed. Trial counsel testified that she told Appellant that it was "possible for him to win" and he had a "chance," but she also said she would not guarantee success. There is no credible record evidence, as suggested by the dissent, that trial counsel conveyed or displayed her confidence of obtaining an acquittal to Appellant.

In her assessment of Appellant's chance of an acquittal at trial, trial counsel testified that Appellant's case and the former co-defendant's case possessed the same operative facts with two exceptions. Those two exceptions are the testimony of the former co-defendant and Appellant's own inculpatory statements that he was talked into going along with the former co-defendant's plan to throw the firebomb at the victim's house and that he drove the former co-defendant to the house. Appellant admitted that trial counsel went over his statements to law enforcement

4

and Appellant thought those statements could be harmful if that interrogation was played for the jury. Appellant also admitted that trial counsel went over the deposition of the former co-defendant with him. Appellant knew that the former co-defendant was going to testify against him and identify him as the person who threw the firebomb. Appellant admitted that trial counsel told him that his case would come down to credibility. The court found trial counsel's assessment that it was "possible" for Appellant to be acquitted was not unreasonable based upon her perspective at the time Appellant rejected the plea offer. It also found trial counsel was not ineffective.

We review the post-conviction court's factual findings for competent, substantial evidence and its legal conclusions *de novo*. See <u>Stephens v. State</u>, 748 So. 2d 1028, 1033 (Fla. 1999). This Court will not substitute its judgment for that of the post-conviction court on questions of fact, the credibility of witnesses, or the weight given to the evidence. See <u>Blanco v. State</u>, 702 So. 2d 1250, 1252 (Fla. 1997).

The framework for analyzing claims of ineffective assistance of counsel was articulated in <u>Strickland v. Washington</u>:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a

5

fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984).

The post-conviction court is instructed to view trial counsel's performance from her perspective at the time of the event in order to avoid the distorting effects of hindsight. Id. at 689.

The dissent is correct in stating that trial counsel had a duty to correctly advise Appellant about his chance at trial. There is nothing in the record, other than Appellant's vacillating testimony during the post-conviction relief hearing that was found not to be credible, that shows trial counsel's assessment of a chance of or a possibility of an acquittal was inaccurate. Actually, there is competent, substantial evidence to support the post-conviction court's finding that trial counsel's assessment that it was "possible" for Appellant to be acquitted at trial was not unreasonable. Trial counsel informed Appellant that his case came down to credibility. Trial counsel was going to do her best to discredit the former co-defendant as he was high on pills and inebriated at the time of the incident. During the former co-defendant's deposition, he admitted that he initially lied to law enforcement about his presence at the scene of the crime and only told them that Appellant threw the firebomb after law enforcement confronted him with evidence that he was present. Additionally, the former co-defendant did not actually see

6

Appellant throw the firebomb. Appellant told trial counsel that he had been coerced into giving law enforcement the statements that he provided during his interview, and she found him credible. If the jury had found Appellant's testimony at trial more credible than the other evidence presented, this case would not be before this Court. Therefore, the dissent's assertion that Appellant had no possibility of an acquittal is inaccurate. There is a distinct difference between the words "possible" or "chance" and "reasonable chance" as it is "possible" and one does have a "chance" to win the lottery, but one does not have a "reasonable possibility" to win the lottery. Trial counsel informed Appellant about the things that must happen in order for Appellant to obtain an acquittal. Therefore, trial counsel's advice was accurate.

Trial counsel's conveyed assessment of a "possible" acquittal with the understanding that the jury would have to find Appellant's testimony at trial more credible than the other evidence, along with the explanation about how the case law applied to all the evidence, provided Appellant all the information required by the law to make an informed decision about whether or not he should accept the plea offer. The record reveals that Appellant was reluctant to accept the favorable plea offer because he would become a convicted felon by entering the plea. Trial counsel testified that Appellant told her he did not want to be a convicted felon over "burnt grass." Appellant was also a nursing student who was close to finishing his bachelor's degree and knew he would not be able to be a licensed nurse if he was a

7

convicted felon. Knowing his fate was sealed if the jury did not find his trial testimony more credible than the other evidence, he still chose to take his case to trial. There is nothing in the record, as suggested by the dissent, to suggest that trial counsel did not make him aware of what he was facing if the jury found his testimony less credible than the other evidence other than Appellant's vacillating testimony about what he and trial counsel discussed. If this Court were to accept the statement that Appellant did not know what would happen if the jury did not believe his trial testimony, then that would mean Appellant did not know he was facing a minimum mandatory sentence of ten years in prison. The post-conviction court stated that trial counsel did not fail to advise Appellant of that fact, and Appellant did not raise that claim in his motion for post-conviction relief.

In retrospect, Appellant should have taken the plea, but this Court cannot look at the facts through the eyes of someone who did not obtain an acquittal. This Court can only view facts as they existed at the time Appellant rejected the plea offer and chose to go to trial. Appellant was provided the facts required by law to make an informed decision about whether or not he should have accepted the plea offer. Based upon the fact that Appellant knew his case came down to his credibility at trial, his former co-defendant was going to testify that Appellant was solely responsible for the crimes, and his own prior statements would be used against him, it is not likely that he would have accepted the plea offer had trial counsel advised

8

him as suggested by the dissent. It is more likely that Appellant would have fired his trial counsel and sought new counsel who would have sought an acquittal rather than urge him to accept the plea.

Even if the post-conviction court had found trial counsel was ineffective, Appellant cannot show prejudice. Under Strickland, Appellant had to show that trial counsel's performance was deficient and he was prejudiced by her performance in order to be entitled to relief. Id. at 687. In order to show prejudice, a defendant must show that: (1) he would have accepted the plea offer had trial counsel advised him correctly; (2) the State would not have withdrawn the plea offer; (3) the trial court would have accepted the plea offer; and (4) the conviction or sentence or both would have been less severe under the plea offer than the defendant received under the judgment and sentence that were actually imposed. Cruz-Betanzos v. State, 169 So. 3d 1236, 1237 (Fla. 1st DCA 2015). The post-conviction court found Appellant's testimony that he would have accepted the plea offer unbelievable. The post-conviction court is the court that assesses credibility and assigns the weight of the evidence, and this Court cannot substitute its judgment for that of the post-conviction court. See Stephens, 748 So. 2d at 1033. The dissent fails to acknowledge that the post-conviction court made a finding of fact that Appellant would not have accepted the plea offer, and that finding is supported by competent and substantial evidence. The post-conviction court's finding is supported by its

9

credibility finding that Appellant's testimony was not believable that he would have accepted the plea and trial counsel's testimony about her conversations with Appellant and his reluctance to become a convicted felon.

AFFIRMED.

WOLF, J., CONCURS; B.L. THOMAS, J., DISSENTS with opinion.

B.L.THOMAS, J., DISSENTING.

I respectfully dissent, because Appellant established that he was entitled to relief under Lafler v. State, 132 S. Ct. 1376 (2012), and Alcorn v. State, 121 So. 3d 419 (Fla. 2013). Defense counsel provided ineffective assistance to Appellant by affirmatively advising him that he had a "possibility" of obtaining an acquittal, when under the "facts and circumstances" of this case, Appellant had a zero possibility of obtaining an acquittal. Cf. Morgan v. State, 991 So. 2d 835, 841 (Fla. 2008) (affirming denial of evidentiary hearing where, although defense counsel informed client he should reject plea offer, and defendant was convicted and received harsher sentence, defendant failed to allege that "counsel's assessment of the chances of success at trial was unreasonable under the facts and circumstances of this case"), *receded from on other grounds by* Alcorn, 121 So. 3d at 419. Defense counsel, who had never previously tried a criminal case in Florida, failed to properly inform Appellant that he had no reasonable alternative to accepting the State's highly advantageous plea offer, which required **no incarceration**. Defense counsel misled Appellant, who, thinking he could be acquitted, was predictably convicted and received a **mandatory ten-year** prison term.

Defense counsel's unjustified confidence regarding the likely outcome at trial misadvised Appellant at a critical stage of the criminal prosecution. Thus, counsel

11

provided ineffective assistance, in violation of the Sixth Amendment to the United States Constitution, under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Based on the evidence, including Appellant's motive and his inculpatory statements to the police, no reasonable jury would have acquitted Appellant. This was not a case where identification was at issue, where the State's testifying witness was cooperating in order to hope to receive a more favorable plea offer, or where the occurrence of the crime was in question. Instead, this was a case where any reasonable defense counsel would have warned Appellant in the most vigorous manner possible that a jury would find Appellant guilty.

When an attorney negligently advises a client that they may have a possibility for an acquittal, when in fact there is no reasonable possibility for such a result, ineffective assistance is demonstrated if the defendant testifies that he or she would have accepted the plea offer with professionally accurate advice. <u>See</u> <u>Hauter v. State</u>, 42 Fla. L. Weekly D65 (Fla. 5th DCA Dec. 22, 2016) (citing <u>Lamb v. State</u>, 202 So. 3d 118, 120 (Fla. 5th DCA 2016), for proposition that "'[a] claim that misinformation supplied by counsel induced a defendant to reject a favorable plea offer'" can state a facially valid postconviction claim, and that defendant must allege that "counsel's assessment of the chances of success at trial was unreasonable" (quoting <u>Colon v. State</u>, 909 So. 2d 484, 490 (Fla. 5th DCA 2005))); <u>Paul v. State</u>, 198 So. 3d 999, 1000 (Fla. 4th DCA 2016) (ordering hearing on claim, based in part

12

on defendant's claim that counsel failed to inform him of maximum sentence or "why case was not defensible"). Here, despite defense counsel's unrebutted testimony that she informed Appellant the plea offer was a good offer, she failed to advise Appellant to forego a trial that was certain to result in a conviction and mandatory prison term. Instead of enabling Appellant's wishful thinking that he (and counsel) might prevail at trial, defense counsel had an affirmative obligation to do just the opposite – encourage Appellant to accept the plea offer in the firmest manner, consistent with counsel's obligation to zealously represent Appellant at trial.

Although the trial court rejected the credibility of Appellant's self-serving testimony that counsel had not informed him that his pretrial statements were inculpatory, [1] even this finding supports rather than defeats Appellant's argument, in part, at least, as it goes to the reality faced by defense counsel and Appellant: Appellant's own words to law enforcement were sure to inculpate him before the jury, providing all the more reason to accept the plea offer.

Furthermore, there are two fundamental and salient facts here which are not in dispute regarding the evidence Appellant faced at trial. First, there was no dispute

---

[1] The trial court conducted a prompt and comprehensive evidentiary hearing, and while I disagree with the legal conclusions of the trial court's order, based on the facts adduced at the hearing in a light most favorable to the order, I commend the trial court's efforts to ensure Appellant's claim was thoroughly and timely evaluated.

that the person testifying against Appellant, who had previously been charged and acquitted, was going to identify Appellant as the person who was the actual perpetrator in firebombing the doctor's home. And second, this same witness would credibly establish, along with other evidence, that no one **except Appellant** had any motive to commit this violent crime, because Appellant thought the victim, a doctor, had provided negligent medical care to Appellant's grandmother. And the acquittal of the other party who testified against Appellant was not a fact or circumstance that favored Appellant. The other party did not give similar inculpatory pretrial statements and did not have Appellant's motive for committing the crime. Even if there was evidence that the other party may have been a principal to the offense, this fact did not exculpate Appellant, but only gave the jury reason to think Appellant was the actual perpetrator who relied on the other party's experience with explosives to help carry out the crime.

Despite these monumental disadvantages, however, defense counsel advised Appellant that there was a real possibility of success:

> I advised him that it is possible that he can win. I advised him also that he **could** take the plea. I would never go to trial knowing the client would lose. **If he thought he had a chance, if I thought no way you had a chance, I would get off the case** before I tried the case.

> But if he was confident that he could win **and I was confident that he could win**, I was confident that we could at least cast reasonable doubt, then yes, I'd say there is a chance you can win. I would never guarantee success, ever. But, yes, I gave him a chance that, **I did say there was a chance he could win.**

14

(Emphasis added.) This was not trial strategy, but unjustified confidence and a failure to properly advise Appellant that he had to accept the plea if he wanted to avoid a sure conviction and ten years in state prison. Defense counsel's illusory evaluation of success was not based on any reasonable view of the evidence, but only on mutually reinforcing false hopes between defense counsel and Appellant. Defense counsel's performance was therefore deficient by misleading Appellant into a false expectation of success at trial, despite the overwhelming evidence of Appellant's guilt.

The fact that Appellant, a person not trained in the law, thought he might obtain an acquittal is not dispositive, when the deficient performance is defense counsel's failure to warn of the adverse consequences Appellant was certain to suffer should he go to trial. It is only speculation to assume Appellant would have continued to obstinately refuse to accept such a generous plea offer, given the State's evidence, as it was defense counsel's professional obligation, **as counsel,** to properly advise Appellant, which would have removed all doubt as to whether Appellant would have accepted a plea offer that no rational defendant would refuse. Cf. Munoz v. S. Miami Hosp., Inc., 764 So. 2d 854, 857 (Fla. 3d DCA 2000) (stating that "[i]t simply flies in the face of common sense" and indulges in improper speculation to uphold summary judgment based on physician's failure to warn other physician of potential adverse medical consequences "conveyed with due concern and gravity by

15

professional colleagues," even where physician, who was not warned, testified he received similar information from lay person). Here, it "flies in the face of common sense" to speculate that Appellant would have chosen a conviction and ten years' imprisonment, rather than plead guilty but avoid incarceration. Appellant, like all criminal defendants, must rely on the legal advice of an attorney to "convey[] with due concern and gravity" the catastrophic consequences that will follow a reckless decision to turn down the only viable option of a favorable and lenient plea settlement when faced with a certain conviction and lengthy incarceration. Id.

In order to determine if a defendant was prejudiced by trial counsel's deficiencies during a plea offer, a defendant must show that: (1) he would have accepted the plea offer had trial counsel advised him correctly; (2) the State would not have withdrawn the plea offer; (3) the trial court would have accepted the plea offer; and (4) the conviction or sentence or both would have been less severe under the plea offer than the defendant received under the judgment and sentence that were actually imposed. Cruz-Betanzos v. State, 169 So. 3d 1236, 1237 (Fla. 1st DCA 2015). All criteria here are met. Because of defense counsel's ineffective legal advice, Appellant was denied the opportunity to make an informed choice, and the record shows that had he been properly informed, in blunt, no-uncertain terms that he was going to be convicted and would be required to serve a ten-year prison term, he would have chosen to accept the plea offer. While the court found that Appellant

16

did not want to accept the plea so he could continue with his nursing education, a guilty verdict, conviction and a ten-year prison term were obviously going to preclude that option. Furthermore, there was no dispute that the plea remained in effect or that the trial court would have accepted the plea.

A criminal trial is not the occasion for hoping for a miracle at a client's expense. Had defense counsel properly advised Appellant, when on the day of trial counsel put on the record that a plea offer was made and rejected, then the ineffectiveness claim could be rejected. But this would require that defense counsel inform the court, and Appellant, that counsel had urged him to accept the plea, advised that he was highly likely to be convicted because the evidence was overwhelming, and that Appellant's rejection of the very reasonable plea offer was **against defense counsel's clear advice to the contrary.**

Defense counsel acknowledged that, had she thought there was no possible chance for an acquittal (which there wasn't, absent a jury pardon), she would have declined to represent Appellant at trial. But that is not the proper response here. Instead, what defense counsel should have told Appellant, in so many words, was: "You have no reasonable chance of winning this trial, and if you turn down the plea, you are choosing a prison sentence over a sentence of house arrest and probation, so I must urge you in the most strenuous terms possible to accept the plea, and if you do not, I must establish a record that your decision is against my legal advice."

Whether defense counsel would then be allowed to withdraw from representing Appellant is not relevant here. And had Appellant, in this scenario, demanded defense counsel withdraw, this issue would not be before us here.

The final question here is what precise remedy should be provided. The State had offered a plea of no incarceration, but community supervision of five years, to include two years of community control. If Appellant was granted relief, I would have recommended the trial court consider the analysis and commentary of Lafler:

> The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.

> In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. See, e.g., Williams, 571 F.3d, at 1088; Riggs v. Fairman, 399 F.3d 1179, 1181 (C.A.9 2005). In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

18

In implementing a remedy in both of these situations, the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here. Principles elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion. At this point, however, it suffices to note two considerations that are of relevance.

First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to prescind (that is to say disregard) any information concerning the crime that was discovered after the plea offer was made. The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial.

Lafler v. Cooper, 132 S. Ct. at 1389.

Here, this case appears to qualify for the second category described in Lafler, because Appellant was convicted of an offense requiring imposition of a mandatory prison term. Thus, the most practical remedy would be to order the state attorney to reoffer the original plea offer, allow Appellant to accept a modified plea offer which includes a guilty plea to both offenses, and credit for time served in state prison up to the date this case is resolved, and issue an order vacating the conviction resulting from the trial. Alcorn, 121 So. 3d at 428-29. This was a very serious crime, and Appellant's legal and moral culpability is not in doubt. The prison sentence he has served is appropriate punishment for this violent offense, and by including it in a

19

modified postconviction plea offer, the interests of justice and the recognition of the "considerable resources the State properly invested in [Appellant's] prosecution" would be properly accommodated.  Id. at 428.  As recognized in Lafler, the courts which face these types of claims must be allowed latitude in crafting remedies.

I would reverse for the reasons stated above for further proceedings. Thus, I respectfully dissent.